1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RHONDA B.,

                              Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

Case No. C19-6086-MLP

ORDER

## I.      INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by discounting her testimony and the opinions of treating physician Elise Leland, M.D. (Dkt. # 15 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.      BACKGROUND

Plaintiff was born in 1964, has an 11th-grade education and a GED, plus additional vocational training in accounting, and has worked as a restaurant server and manager. AR at 43-44, 217. Plaintiff was last gainfully employed in December 2016. *Id.* at 217.

In December 2016, Plaintiff applied for benefits, alleging disability as of December 7, 2016. AR at 177-83. Plaintiff's application was denied initially and on reconsideration, and

Plaintiff requested a hearing. *Id.* at 105-11, 113-21. After the ALJ conducted a hearing in

September 2018 (*id.* at 38-69), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 16-

30.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff has the following severe impairments: bilateral thumb osteoarthritis, lumbar and cervical degenerative joint disease and degenerative disc disease, carpal tunnel syndrome, anxiety disorder, affective disorder, and attention deficit disorder ("ADD").

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: she can occasionally climb ramps and stairs, and never climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl, and can frequently perform handling and fingering bilaterally. She can occasionally reach overhead bilaterally and can frequently operate foot controls bilaterally. She should avoid concentrated exposure to extreme cold and heat, vibration, and work hazards. She also can perform simple, routine tasks.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 16-30.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

Commissioner's final decision. AR at 1-7. Plaintiff appealed the final decision of the

Commissioner to this Court. (Dkt. # 4.)

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

IV.    DISCUSSION

A.    The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony

The ALJ summarized Plaintiff's allegations and explained that he discounted them because (1) they were inconsistent with the "minimal objective medical findings"; (2) her symptoms improved during the adjudicated period; (3) she chose not to pursue aggressive treatment for her thumb osteoarthritis; (4) she had many normal objective mental findings and

received "quite conservative" treatment for her mental impairments; (5) her symptoms did not

prevent her from completing many activities requiring the use of her hands and feet; and (6) she

stopped working because her business closed, rather than because of her impairments. AR at 22-

26. Plaintiff argues that the ALJ's reasons were not clear and convincing, as required in the

Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The Court will

consider each of Plaintiff's arguments in turn.

### 1.     *Minimal Objective Medical Findings*

Plaintiff cites various medical findings and argues that those findings corroborate her

reports, and that the ALJ erred in relying on other findings as evidence that undermines her

reports. (Dkt. # 15 at 7-9.) The findings Plaintiff cites describe various deficits or symptoms such

as tenderness, sensitivity, or mild strength or sensory loss, but none of these findings is

necessarily inconsistent with the ALJ's interpretation of the record or otherwise demonstrates

that the ALJ erred in finding that the objective medical findings failed to corroborate Plaintiff's

allegations. That Plaintiff emphasizes these findings rather than the findings highlighted by the

ALJ does not show error in the ALJ's decision.

The ALJ also pointed to a treatment note where one of Plaintiff's doctors described her

foot condition as "rarely disabling" and that it would not lead to Plaintiff needing a wheelchair.

AR at 22 (referencing *id*. at 326). Plaintiff contends that the fact that her condition would not

lead to a need for a wheelchair does not imply anything about whether she can work (dkt. # 15 at

9), which may be true, but at the time the doctor made this comment, Plaintiff was still working

with this condition and had been experiencing these symptoms for 15 years (during which time

she had been working). AR at 325-26. The doctor did not suggest that Plaintiff should stop or

reduce her working, or that she needed any workplace accommodations. *Id*. at 326. Under these

circumstances, the ALJ reasonably found that the doctor's comment, along with other evidence in the record, undermined Plaintiff's allegations that her foot condition caused disabling limitations.

Plaintiff also argues that the ALJ erred in emphasizing that she had arthritis in her thumbs, but not in the rest of her hands, because such a statement suggests that her arthritis did not significantly affect her ability to use her hands, even though "opposable thumbs are significant and what separate humans (and monkeys) from the rest of the animal world." (Dkt. # 15 at 9.) But the ALJ's assessment of Plaintiff's thumb and hand limitations did not stop with the notation that Plaintiff did not have hand arthritis. The ALJ went on to summarize treatment notes relating to Plaintiff's hand/thumb condition, and concluded that in light of the many normal objective findings related to the hand/thumb, as well as Plaintiff's report of improvement in her hand symptoms since she had stopped working as a waitress and her decision not to pursue surgery for her symptoms, her thumb osteoarthritis did not cause disabling limitations. AR at 24. Plaintiff has not shown that the ALJ's assessment of her thumb condition in its entirety is erroneous.

### 2.   *Improvement*

Plaintiff disputes that the evidence cited by the ALJ demonstrates that her condition improved. (Dkt. # 15 at 9.) The ALJ noted that Plaintiff was weaned from opioids, which she had been prescribed for her neuropathy pain, shortly after her alleged onset of disability. AR at 23. The ALJ also noted that opioids were not reintroduced even after Plaintiff switched primary care providers, and found that this evidence "suggests improvement of her symptoms from when she was working." *Id*. The ALJ also cited Plaintiff's report to a provider that her hand symptoms were not bothering her as much, compared to when she had been working. *Id*. at 24 (citing *id*. at

446).

Plaintiff argues that a switch from opioid medication to other medications does not necessarily imply that her symptoms improved. (Dkt. # 15 at 9.) Indeed, the treatment notes discussing Plaintiff's weaning from opioids indicates that the switch was made not because Plaintiff's pain was reduced, but because Plaintiff's doctor believed that opioids were not the appropriate management tool for neuropathic pain. *See* AR at 655-56. Thus, the context of Plaintiff's medication adjustment indicates that the ALJ's interpretation is inaccurate.

Nonetheless, the ALJ also referenced Plaintiff's improvement with physical therapy (AR at 25), which is supported by substantial evidence in the record. *Id*. at 666, 691, 707, 749. Thus, although the ALJ erred in finding that Plaintiff's medication adjustment reflected improvement in her neuropathy symptoms, the ALJ properly relied on the evidence of the improvement of Plaintiff's neck and back pain with physical therapy, in assessing Plaintiff's alleged limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain.").

> *3.     Activities*

Plaintiff lastly challenges the ALJ's findings regarding her activities. As noted above, the ALJ found that Plaintiff's ability to complete many activities that require the use of hands and feet (completing personal care and light household chores, driving, going out to lunch, shopping, preparing simple meals, babysitting a grandchild) was inconsistent with her allegation of disabling hand and foot symptoms. AR at 26.

1    Plaintiff contends that she struggled with household chores and preparing meals, and that

2    her limited ability to perform those activities did not demonstrate an ability to work. (Dkt. # 15 at

3    10.) But the ALJ did not cite the activities as evidence of Plaintiff's ability to work, but as

4    evidence inconsistent with her allegations. AR at 26. Indeed, Plaintiff alleged that she could only

5    stand for five minutes, sit for an hour, and lift/carry only seven pounds (*id*. at 22), and the ALJ

6    reasonably found these allegations to be inconsistent with the activities the ALJ listed. *See Orn v.*

7    *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1)

8    contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

9    *4.    Work History*

10    The ALJ noted that Plaintiff stopped working for reasons other than her impairments. *See*

11    AR at 26. On at least three occasions, Plaintiff stated that she was laid off when the restaurant

12    she worked for closed: at the hearing, in her agency paperwork, and to a treating doctor. *Id*. at

13    44-45, 216, 337. Plaintiff emphasizes that on another occasion she told a different doctor that she

14    quit her job due to hand and foot pain, plus anxiety. (Dkt. # 15 at 10 (referencing AR at 1259).)

15    The ALJ's finding is supported by substantial evidence in the record, and Plaintiff has not shown

16    that the ALJ erred in relying on the substantial evidence showing that that she stopped working

17    for reasons other than her impairments. *See* Social Security Ruling 82-61, 1982 WL 31387, at *1

18    (Jan. 1, 1982) ("A basic program principle is that a claimant's impairment must be the primary

19    reason for his or her inability to engage in substantial gainful work.").

20    Because the ALJ provided several clear and convincing reasons to discount Plaintiff's

21    allegations, including the unchallenged reasoning related to Plaintiff's mental allegations, the

22    Court affirms this portion of the ALJ's decision and finds that any error therein is harmless. *See*

23    *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

1          **B.      The ALJ Did Not Harmfully Err in Discounting Dr. Leland's Opinions**

2                  Dr. Leland, Plaintiff's primary care provider, completed form opinions in January 2017

3    describing Plaintiff's physical and mental limitations. AR at 329-33. The ALJ summarized Dr.

4    Leland's opinions and explained that he gave them partial weight because (1) Dr. Leland stopped

5    treating Plaintiff after the first couple of months of the adjudicated period and therefore has

6    limited perspective on Plaintiff's RFC throughout the period; (2) the mental limitations she

7    described are outside her area of expertise as a family physician; (3) some of the boxes she

8    checked were internally inconsistent; and (4) her treatment notes indicated that when asked if she

9    would complete an opinion to support Plaintiff's disability application, she stated she could not

10   endorse "full disability" because she believed Plaintiff could perform work more sedentary than

11   her waitressing job. *Id*. at 28. Plaintiff argues that these reasons are not legally sufficient, and the

12   Court will consider Plaintiff's contentions in turn.

13                 *1.      Legal Standards*

14                 In general, more weight should be given to the opinion of a treating doctor than to a non-

15   treating doctor, and more weight to the opinion of an examining doctor than to a non-examining

16   doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).[3] Where not contradicted by another

17   doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing"

18   reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where

19   contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and

20   legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d

21   at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

22

23   _____

[3] Because Plaintiff applied for disability prior to March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

1

2.     *Dr. Leland's Limited Perspective*

2

Plaintiff argues that the ALJ erred in emphasizing that Dr. Leland stopped treating

3

Plaintiff a couple of months into the adjudicated period because the record does not show that

4

Dr. Leland's opinions would not be equally applicable to the entire period. (Dkt. # 15 at 3.) The

5

regulations permit an ALJ to consider the length of a provider's relationship with a claimant and

6

his or her degree of familiarity with the longitudinal record, however. *See* 20 C.F.R. §

7

404.1527(c)(2), (6). The ALJ reasonably found that because the bulk of Dr. Leland's treating

8

relationship predated the adjudicated period, her opinions did not necessarily reflect Plaintiff's

9

functioning throughout the adjudicated period. The ALJ did not err in discounting Dr Leland's

10

opinions on this basis.

11

3.     *Dr. Leland's Expertise*

12

The Court agrees with Plaintiff that the ALJ erred in discounting Dr. Leland's opinion as

13

to Plaintiff's mental limitations in light of Dr. Leland's family practice specialty, because, as the

14

ALJ himself noted (AR at 27), Dr. Leland treated Plaintiff's anxiety. *See Lester*, 81 F.3d at 833.

15

This error is harmless, however, in light of the other valid reasons the ALJ provided for

16

discounting Dr. Leland's opinions.

17

4.     *Internal Inconsistencies*

18

The ALJ identified several internal inconsistencies and vagaries that he found to

19

undermine the reliability of Dr. Leland's opinions. Specifically, the ALJ noted that Dr. Leland

20

opined that Plaintiff's absenteeism would depend on the type of work that she was performing,

21

and also opined both that it was unknown how many days of work Plaintiff would miss in one

22

month, and that she would miss 3-4 days per month. AR at 28 (referencing *id*. at 330, 332). The

23

ALJ also contrasted Dr. Leland's opinion that Plaintiff had a marked limitation in completing a

workweek with Dr. Leland's opinion that Plaintiff had only a slight limitation in her ability to maintain regular attendance, perform activities within a schedule, and be punctual. *Id*. at 28 (referencing *id*. at 331-32).

Plaintiff argues that the purported inconsistency as to absenteeism is not actually an inconsistency because it merely reflects Dr. Leland's differing opinions regarding the impact of Plaintiff's physical conditions as compared to her mental conditions. (Dkt. # 15 at 5.) This argument is not persuasive in light of Dr. Leland's indication that the opinion regarding physical limitations accounted for limitations caused by Plaintiff's anxiety and ADD, in addition to her physical limitations, and that the psychological opinion accounted for anxiety and ADD. *Compare* AR at 329 *with id*. at 331. Dr. Leland herself indicated that both opinions account for limitations caused by Plaintiff's mental conditions, which undercuts Plaintiff's argument.

Plaintiff goes on to argue that the ALJ erred in finding an inconsistency in Dr. Leland's opinions regarding Plaintiff concentration and persistence deficits because the ALJ credited similar opinions offered by a State agency consultant. (Dkt. # 15 at 5-6 (citing AR at 80, 97).) Plaintiff's point is not well-taken, when the State agency opinions are read in their entirety. First, the State agency consultants found that Plaintiff was not significantly limited in her ability to maintain regular attendance, perform activities within a schedule, and be punctual, but was moderately limited in her ability to complete a workday/workweek. AR at 80, 97. This contrast is less sharp than the contrast contained in Dr. Leland's opinion, because Dr. Leland identified a disabling (marked) limitation in Plaintiff's ability to complete a workday/workweek, whereas the State agency consultants did not. Furthermore, the State agency consultants explained the impact of Plaintiff's moderate limitation in her ability to complete a workday/workweek: Plaintiff possessed enough concentration, persistence, and pace abilities to complete a full-time work

schedule if she was limited to simple, repetitive tasks. *Id*. Dr. Leland's opinion contains no such explanation as to how her differing opinions as to Plaintiff's concentration and persistence deficits could be reconciled. Thus, because Plaintiff has not pointed to an internal inconsistency in the ALJ's decision that undermines the validity of the ALJ's finding of inconsistency within Dr. Leland's opinions, the Court rejects Plaintiff's unpersuasive.

For these reasons, the Court finds that Plaintiff has not shown that the ALJ erred in discounting Dr. Leland's opinions based on internal inconsistencies. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("Determining whether inconsistencies are material (or are in fact inconsistencies at all)" is a responsibility of the ALJ, along with *inter alia* determining whether those inconsistencies are relevant to discounting medical opinions).

> 5.   *Dr. Leland's Reluctance to Describe Plaintiff as Fully Disabled*

The ALJ noted that when Plaintiff first asked Dr. Leland to provide an opinion in support of her application for disability, at a time (December 7, 2016) when Plaintiff was finishing up her work as a waitress and starting her disability application, Dr. Leland responded that she believed Plaintiff "could do more sedentary work, so I can't honestly write in support of full disability." AR at 1285. Plaintiff replied that she did not require Dr. Leland to endorse her disability status, but said that she also has problems sitting, in case Dr. Leland believed she could do a desk job. *Id*. Dr. Leland ultimately completed the form opinions the following month. *Id*. at 329-33.

Plaintiff argues that the import of Dr. Leland's comment is unclear, and that in any event, if she was limited to sedentary work she would be found disabled under the Medical-Vocational Guidelines. (Dkt. # 15 at 6.) Plaintiff's arguments are not persuasive. Dr. Leland did not opine that Plaintiff was restricted to sedentary work as defined in the Commissioner's regulations; she indicated that she believed Plaintiff could perform work "more sedentary" than her waitress job,

and thus was not fully disabled. Furthermore, Dr. Leland's comment is sufficiently clear and relevant to assessing the foundation of her opinion, given that Dr. Leland apparently believed Plaintiff was not disabled shortly before authoring opinions describing disabling limitations not referenced in the treatment notes. *See* AR at 1259-1351. Thus, the ALJ did not err in considering Dr. Leland's opinions in the context of her treatment notes. *See Tommasetti*, 533 F.3d at 1041 (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). Because the ALJ provided multiple specific, legitimate reasons to discount Dr. Leland's opinion, the Court affirms the ALJ's assessment of Dr. Leland's opinion.

## V.      CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 10th day of March, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12